## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**KELEMEN'S KREATIONS LLC,**

                              **Plaintiff,**

**v.**

**EMSCO GROUP, INC.,**

                              **Defendant.**

Civil Action No. _____

**JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kelemen's Kreations LLC files its Original Complaint against defendant Emsco Group, Inc., ("Emsco") for patent infringement under 35 U.S.C. §§ 271(a) and (b), for trademark infringement under 15 U.S.C. § 1114, for false designation of origin under 15 U.S.C. § 1125, and for unfair competition and deceptive trade practices under 6 Del. C. 1953, § 2532(a). Plaintiff alleges, based on its personal knowledge of its own actions and based upon information and belief as to all others' actions, as follows.

## NATURE OF THE ACTION

1.       This action arises under the patent laws of the United States, 35 U.S.C. § 100, *et seq*., for infringement of one or more claims of U.S. Patent No. 6,145,899 ("the '899 patent"), issued on November 14, 2000, to Michael Kelemen, titled "Shock Absorbent Shovel".  *See* Exhibit A.

2.       This action also arises under the trademark laws of the United States and the Lanham Act, 15 U.S.C. § 1051, *et seq*., for infringement of U.S. Trademark No. 77094618, registered October 9, 2007, to Michael Kelemen for the trademark "IMPACT ELIMINATOR". *See* Exhibit B.

3.      This action also includes claims for unfair competition arising under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. 1953, § 2531, *et. seq.*

## THE PARTIES

4.      Plaintiff Kelemen's Kreations LLC ("Kelemen LLC") is a Delaware limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 710 N. Post Oak, Suite 350, Houston, Texas 77024.  Kelemen LLC's registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.      On information and belief, defendant Emsco Group, Inc., is a Pennsylvania corporation with a principal place of business at 617 Church Street, Girard, Pennsylvania 16417.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 1367.

7.      This Court has personal jurisdiction over defendant Emsco.  Emsco conducts business in this district, it has committed acts of direct and induced patent infringement in this district and throughout the U.S., it has committed acts of trademark infringement and false designation of origin in this district and throughout the U.S., and it has committed acts of unfair competition and deceptive trade practices in this district.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because, among other reasons, Emsco is subject to personal jurisdiction in this district, it has regularly conducted business in this district, and certain of the acts listed in this complaint occurred in this district.

## FACTUAL BACKGROUND

9.      Michael Kelemen is the inventor of the Shock Absorbent Shovel as described in the '899 patent.  Mr. Kelemen first conceived of his invention in 1998 while working in the roofing business.  Shovels are needed in the roofing business for tearing off tar, gravel, and shingles from roofs.  As Mr. Kelemen has experienced, shoveling roofs for long periods of time creates serious bodily fatigue and puts great stress on a person's hands, wrists, arms, and back. Mr. Kelemen thought that a shock absorbent handle connected to a shovel would relieve much of the stress associated with shoveling and reduce the possibility of injury and fatigue.  He also intended that his shovel be used for all landscaping applications.  He felt so strongly about his invention that he sought and obtained U.S. and Canadian patents for his invention.  Mr. Kelemen also obtained a U.S. registered trademark for "IMPACT ELIMINATOR" for his shovel.

10.      Looking to market his invention, Mr. Kelemen through his Canadian company Kelemens Kreations Inc. sought out companies like Emsco to market, distribute, and sell his invention.  Mr. Kelemen first spoke with Emsco between July 2008 and October 2008 about his invention, and then again beginning in January 2010.  Emsco showed great interest in Mr. Kelemen's invention, and they began working together in February 2010 to test the market's interest in Mr. Kelemen's patented shovel.  Mr. Kelemen offered Emsco a license to his '899 patent, including a royalty rate of 6% of gross sales per unit sold with a $25,000 minimum up front and guaranteed payment for the first year, a $50,000 minimum guaranteed payment for the second year, and a $75,000 minimum guaranteed payment for the third and all subsequent years through the life of his patent.  Emsco never accepted this offer or any other verbal or written offer from Mr. Kelemen.

11.      Before meeting Emsco, Mr. Kelemen had an agreement from June 2005 to June

2008 with Bushpro Supplies, Inc. ("Bushpro"), of Vernon, British Columbia, Canada, to sell his patented shovels.  Bushpro contracted with Goldenleaf Enterprise, Ltd., of Guangzhou, China, to manufacture Mr. Kelemen's shovels.  Bushpro provided Goldenleaf with mold designs and tooling for manufacturing Mr. Kelmen's shock absorbent handles.  Goldenleaf created molds from Bushpro's mold designs, but Bushpro owned the rights to the molds and the tooling for manufacturing the shock absorbent handles.  The molds for the shock absorbent handles were designed to stamp Mr. Kelemen's U.S. and Canadian patent numbers and his U.S. trademark on the handles.  Upon terminating his agreement with Bushpro, Mr. Kelemen purchased Bushpro's rights to the molds and tooling for manufacturing the shock absorbent handles, and he purchased a portion of Bushpro's remaining inventory in July 2008.  Although the molds and tooling remained in Goldenleaf's possession, Mr. Kelemen remained the owner of the molds and tooling, and any manufacturing of Mr. Kelemen's shock absorbent handle remained under his supervision.

12.     On or about February 2010, Mr. Kelemen introduced Emsco to Goldenleaf, who began manufacturing Mr. Kelemen's shock absorbent handles and shovels for Emsco. Goldenleaf used the same molds for Emsco's shock absorbent handles as it used for Bushpro's handles, having Mr. Kelemen's U.S. and Canadian patent numbers and U.S. trademark reproduced on them.

13.     From March 2010 to June 2011, Mr. Kelemen also introduced Emsco to numerous sales outlets to test the sales of his patented shovel, and Goldenleaf manufactured tens of thousands of Mr. Kelemen's shovels for Emsco who sold the shovels to retailers in the U.S. Emsco never paid Mr. Kelemen any royalties for its sales, but Mr. Kelemen continued trying to negotiate in good faith with Emsco to license his intellectual property, including his '899 patent

and his IMPACT ELIMINATOR trademark.  Emsco ceased communications with Mr. Kelemen.

14.     On information and belief, Emsco is using a Chinese manufacturer other than Goldenleaf to manufacture its infringing products, and that the Chinese manufacturer fraudulently obtained the designs to Mr. Kelemen's molds from Goldenleaf.  The Chinese manufacturer used the mold designs to recreate the molds and continue manufacturing Emsco's infringing products.  Exhibit C provides true and accurate images of a handle from one of Emsco's shovels showing the '899 patent number and IMPACT ELIMINATOR trademark reproduced on it.

15.     Upon discovering in 2012 that Emsco was still selling Mr. Kelemen's patented shovel, on or about October 2, 2012, Mr. Kelemen wrote Emsco, demanding that it cease and desist all further manufacturing and sales of Mr. Kelemen's shovels.  Mr. Kelemen requested that Emsco provide him an accounting of all of the shovels that Emsco had sold to date, including to whom the shovels were sold, prices, and quantities.  Emsco did not respond.

16.     To date, Emsco has continued manufacturing and sale of Mr. Kelemen's patented shovels in the U.S. without a license to Mr. Kelemen's '899 patent or his IMPACT ELIMINATOR trademark, and without paying Mr. Kelemen any royalties.

17.     Emsco sells its shovels under the brand names Bigfoot™ and ShockShield™, which include at least its 1289 Ice Chopper, 1887 SnoDozer™, 1888 Snow Shovel, 1889 SnoDozer™ S-Bend Handle, and 1890 25" Snow Pusher shovels (hereafter "Accused Products").  Exhibit D provides true and accurate images of Emsco's Accused Products taken from Emsco's website.

18.     On information and belief, Emsco has partnered with at least the following retailers to sell its Accused Products in the U.S.  This list is not exhaustive.  Emsco has also

partnered with websites that direct purchases of its Accused Products in the U.S. to at least the following retailers' websites:

> Amazon.com,
>
> A.M. Leonard,
>
> Gardeners Edge,
>
> The Home Depot,
>
> Precise Chemical & Equipment,
>
> Shop.com,
>
> Snowblower21.com,
>
> Tools2Parts.com,
>
> Wal-Mart,
>
> Wayfair.com,
>
> Weiss Bros., and
>
> Wight's Home & Garden.
>
> (hereafter "Retail Partners").

19.     Exhibit E provides true and accurate descriptions of the Emsco products that are sold by each of its Retail Partners.

20.     Mr. Kelemen was the original assignee of his intellectual property, including his '899 patent and his IMPACT ELIMINATOR trademark.  He later assigned all substantial rights and interest in his intellectual property to his Canadian corporation, Kelemen's Kreations Inc., and then to his Delaware limited liability company, Kelemen LLC, including his rights to sue for all past, present, and future infringement of the '899 patent and the IMPACT ELIMINATOR trademark.  Mr. Kelemen is a majority shareholder of Kelemen LLC.

## COUNT I
## PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(a)

21.     The facts and allegations as stated in paragraphs 1 to 20 are incorporated by reference.

22.     Emsco has infringed directly or under the doctrine of equivalents one or more claims of the '899 patent under 35 U.S.C. § 271(a) by making, having made, selling, and offering for sale its Accused Products in the U.S. without a license to the '899 patent.

23.     On information and belief, Emsco has known of the '899 patent since at least July 2008 when Mr. Kelemen first approached Emsco in good faith to market and sell his patented shovel.  Mr. Kelemen continued trying to negotiate a license with Emsco in good faith until at least June 2011.

24.     Emsco knows that the '899 patent number is reproduced on each handle of its Accused Products, and that the '899 patent number has been reproduced on each handle since at least the first day that Emsco began selling its Accused Products.

25.     Emsco's direct infringement is willful.

26.     Emsco has acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and it knew or should have known of that objectively high risk.

27.     On information and belief, Kelemen LLC has been refused opportunities to license its '899 patent to other manufacturers, wholesalers, and retailers in the U.S. due to Emsco's infringement.

## COUNT II
## PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(b)

28.     The facts and allegations as stated in paragraphs 1 to 27 are incorporated by reference.

29.     Emsco has induced infringement and continues to induce infringement of the '899 patent under 35 U.S.C. § 271(b).

30.     Emsco has known of the '899 patent since at least July 2008 when Mr. Kelemen first approached Emsco in good faith to market and sell his patented shovel.  Mr. Kelemen continued trying to negotiate a license with Emsco in good faith until at least June 2011.

31.     Emsco has contracted with at least its Retail Partners to sell its Accused Products knowing that its Accused Products infringe directly or under the doctrine of equivalents one or more claims of the '899 patent.

32.     Emsco knows that the '899 patent number is reproduced on each handle of its Accused Products, and that the '899 patent number has been reproduced on each handle since at least the first day that its Retail Partners began selling Emsco's Accused Products.

33.     Emsco knew and specifically intended that its Retail Partners' would directly infringe the '899 patent by selling and offering for sale Emsco's Accused Products.

34.     Emsco's induced infringement is willful.

35.     Emsco has acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and it knew or should have known of that objectively high risk.

36.     On information and belief, Kelemen LLC has been refused opportunities to license its '899 patent to other manufacturers, wholesalers, and retailers in the U.S. due to Emsco's inducing of its Retail Partners' direct infringement.

## COUNT III
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

37.     The facts and allegations as stated in paragraphs 1 to 36 are incorporated by reference.

38.     Defendant Emsco itself, and at least through its Retail Partners, has infringed and

continues to infringe the IMPACT ELIMINATOR trademark under 15 U.S.C. § 1114(1) by

selling and offering for sale its Accused Products having the IMPACT ELIMINATOR

trademark reproduced on the handle of each Accused Product.

39.     On information and belief, Emsco has known of the IMPACT ELIMINATOR

trademark since at least July 2008 when Mr. Kelemen first approached Emsco in good faith to

market and sell his patented shovel.  Mr. Kelemen continued trying to negotiate a license with

Emsco in good faith until at least June 2011.

40.     Mr. Kelemen specifically referenced his IMPACT ELIMINATOR trademark in

at least a February 5, 2010, letter to Emsco.

41.     Emsco's trademark infringement is willful.

42.     On information and belief, Kelemen LLC has been refused opportunities to

license its IMPACT ELIMINATOR trademark to other manufacturers, wholesalers, and retailers

in the U.S. due to Emsco's infringement.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125

43.     The facts and allegations as stated in paragraphs 1 to 42 are incorporated by

reference.

44.     Emsco's use of the '899 patent number and the IMPACT ELIMINATOR

trademark on its Accused Products is likely to cause confusion, to cause mistake, or to deceive

as to its affiliation, connection, or association with Kelemen LLC and Kelemen LLC's

sponsorship or approval of Emsco's Accused Products in violation of 15 U.S.C. §

1125(a)(1)(A).  Kelemen LLC is the only valid owner of the '899 patent and the IMPACT

ELIMINATOR trademark, and Kelemen LLC has not granted Emsco a license to the '899 patent

or the IMPACT ELIMINATOR trademark.

45.     Emsco's use of the '899 patent number and the IMPACT ELIMINATOR trademark in commercial advertising and promotion has misrepresented the nature, characteristics, and qualities of its Accused Products in violation of 15 U.S.C. § 1125(a)(1)(B). Kelemen LLC is the only valid owner of the '899 patent and the IMPACT ELIMINATOR trademark, and Kelemen LLC has not granted Emsco a license to the '899 patent or the IMPACT ELIMINATOR trademark.

46.     Kelemen LLC has been damaged by Emsco's actions, and it is entitled to recover all relief available to it under this Section.

47.     On information and belief, Kelemen LLC has been refused opportunities to license its IMPACT ELIMINATOR trademark to other manufacturers, wholesalers, and retailers in the U.S. due to Emsco's false designation of origin violations.

## COUNT V
## UNFAIR COMPETITION UNDER DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT, 6 DEL. C. 1953, § 2531, *ET. SEQ.*

48.     The facts and allegations as stated in paragraphs 1 to 47 are incorporated by reference.

49.     Emsco's use of the '899 patent number and the IMPACT ELIMINATOR trademark on its Accused Products passes off its Accused Products as those of Kelemen LLC's products in violation of 6 Del. C. 1953, § 2532(a)(1).  Kelemen LLC is the only valid owner of the '899 patent and the IMPACT ELIMINATOR trademark, and Kelemen LLC has not granted Emsco a license to the '899 patent or the IMPACT ELIMINATOR trademark.

50.     Emsco's use of the '899 patent number and the IMPACT ELIMINATOR trademark on its Accused Products causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of its Accused Products in violation of 6 Del.

C. 1953, § 2532(a)(2).  Kelemen LLC is the only valid owner of the '899 patent and the IMPACT ELIMINATOR trademark, and Kelemen LLC has not granted Emsco a license to the '899 patent or the IMPACT ELIMINATOR trademark.

51.     Emsco's use of the '899 patent number and the IMPACT ELIMINATOR trademark on its Accused Products causes a likelihood of confusion or misunderstanding as to its affiliation, connection, or association with, or certification by Kelemen LLC in violation of 6 Del. C. 1953, § 2532(a)(3).  Kelemen LLC is the only valid owner of the '899 patent and the IMPACT ELIMINATOR trademark, and Kelemen LLC has not granted Emsco a license to the '899 patent or the IMPACT ELIMINATOR trademark.

52.     Emsco's deceptive trade practices have directly harmed Kelemen LLC for which there is no adequate remedy at law.  Unless permanently enjoined, Emsco's actions will continue causing Kelemen LLC to suffer irreparable harm.  Kelemen LLC is entitled to a permanent injunction under the principles of equity and on terms that this Court deems reasonable under 6 Del. C. 1953, § 2533(a).

53.     Emsco's deceptive trade practices are willful.

54.     Emsco's willful deceptive trade practices makes this an exceptional case under 6 Del. C. 1953, § 2533(b), entitling Kelemen LLC to all of its reasonable attorneys' fees and costs for bringing this action.

55.     On information and belief, Kelemen LLC has been refused opportunities to license its '899 patent and IMPACT ELIMINATOR trademark to other manufacturers, wholesalers, and retailers in the U.S. due to Emsco's unfair competition and deceptive trade practices.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in its favor against defendant and grant the following relief:

A.      A judgment that defendant has infringed directly or under the doctrine of equivalents one or more claims of the '899 patent under 35 U.S.C. § 271(a);

B.      A judgment that defendant has induced infringement of one or more claims of the '899 patent under 35 U.S.C. § 271(b);

C.      A judgment that the '899 patent is not invalid;

D.      A permanent injunction preventing defendant and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert or participation with any of them from directly infringing or inducing infringement of the '899 patent;

E.      A judgment that defendant has willfully infringed the '899 patent and awarding up to treble damages under 35 U.S.C. § 284;

F.      A judgment that this is an exceptional case under 35 U.S.C. § 285 and awarding plaintiff its reasonable attorneys' fees for prosecuting this action;

G.      An order requiring defendant to account for all past, present, and future infringing sales and for periodic accountings of defendant's future sales through the life of the '899 patent;

H.      If a permanent injunction is not granted, a judgment awarding damages, including at least a reasonable royalty, prejudgment and post-judgment interest, costs, and supplemental damages for any continuing post-verdict infringement through the entry of a final judgment;

I.      A judgment that defendant has infringed the IMPACT ELIMINATOR trademark under 15 U.S.C. § 1114(1);

J.      A judgment that defendant has willfully infringed the IMPACT ELIMINATOR trademark;

K.      A judgment awarding disgorgement of defendant's profits, up to treble of plaintiff's damages due to defendant's infringement, and plaintiff's costs and attorneys' fees in this action under 15 U.S.C. § 1117;

L.      A judgment awarding up to treble damages of defendant's profits together with plaintiff's reasonable attorneys' fees under 15 U.S.C. § 1117(b);

M.      A judgment that defendant is liable under 15 U.S.C. § 1125 for false designation of origin;

N.      A judgment awarding damages under 15 U.S.C. § 1125;

O.      A judgment that defendant has violated the Delaware Uniform Deceptive Trade Practices Act under 6 Del. C. 1953, §§ 2532(a)(1), (a)(2), and (a)(3).

P.      A permanent injunction under 6 Del. C. 1953, § 2533(a).

Q.      A judgment that defendant's deceptive trade practices are willful.

R.      A judgment that this is an exceptional case under 6 Del. C. 1953, § 2533(b), and awarding plaintiff its reasonable attorneys' fees and costs for prosecuting this action.

S.      A judgment awarding costs under 28 U.S.C. § 1920; and

T.      Such other actual and equitable relief to which plaintiff is entitled or this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 17, 2015

Edward W. Goldstein
   *Pro hac vice forthcoming*
GOLDSTEIN LAW, PLLC
710 N. Post Oak, Suite 350
Houston, Texas 77024
Phone: (713) 877-1515
Fax: (713) 877-1737
Email: egoldstein@gliplaw.com

Peter J. Corcoran, III
   *Pro hac vice forthcoming*
CORCORAN IP LAW, PLLC
2509 Richmond Road, Suite 380
Texarkana, Texas 75503
Phone: (903) 701-2481
Fax: (844) 362-3291
Email: peter@corcoranip.com

Respectfully submitted,

   */s/ Kenneth L. Dorsney*
Richard K. Herrmann (#405)
Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801-1494
302.888.6800
rherrmann@morrisjames.com
kdorsney@morrisjames.com

*Counsel for Plaintiff*
*Kelemen's Kreations LLC*

14